UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x  06 CV                    762

HOPE HODSON,

                                        Plaintiff,     :        VERIFIED COMPLAINT

        -against-                                      :

THE AMERICAN DIABETES ASSOCIATION                      :
DEFINED CONTRIBUTION PENSION PLAN,                     :
HOLLY PRYATEL, AS THE                                  :
ADMINISTRATOR OF THE AMERICAN                          :
DIABETES ASSOCIATION DEFINED                           :
CONTRIBUTION PENSION PLAN, AND                         :
THE BOARD OF TRUSTEES THE AMERICAN                     :
DIABETES ASSOCIATION DEFINED                           :
CONTRIBUTION PENSION PLAN,                             :
                                                       :
                                        Defendants.    :
------------------------------------------------------------x

## PRELIMINARY STATEMENT

        Plantiff Hope Hodson is a disabled woman whose vital employee benefits were

terminated, thereby violating the "anti-cutback" rule of the Employee Retirement Income

Security Act of 1974 (hereinafter "ERISA"), designed to protect pensioners and their

beneficiaries, and the specific terms of her employee benefits plan. She brings this action for an

order declaring her right to these benefits and directing their reinstatement, with interest.

## JURISDICTION

        1. Jurisdiction rests in this Court pursuant to Section 502(e) of the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e).

        2. Jurisdiction is also conferred upon the Court by ERISA §§ 502(a)(1)(B) and

502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), and, as an action brought pursuant to a federal statute, by 28.U.S.C. §.1331.

## VENUE

3. The Southern District of New York, the location of Plaintiff's address and the location of Defendants' breach of their obligations to her, is an appropriate venue pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## THE PARTIES

4. Plaintiff Hope Hodson resides at 220 East 94th Street, in New York City. She is permanently disabled and depends solely on disability benefits provided by the Social Security Administration and by her former employer's pension plan. Her limited income is subsidized by federal "Section 8" housing assistance benefits for low-income renters, as provided under The United States Housing Act of 1937, as amended by The Housing and Community Development Act of 1974. See 42 U.S.C. § 1437f.

5. Defendants are an employee benefits plan ("the Plan") maintained by Plaintiff's former employer, the American Diabetes Association (the "ADA"), its administrators and its trustees, with principal offices at 1701 N. Beauregard Street, Alexandria, Virginia 22311.

6. On information and belief, the ADA has enjoyed and continues to enjoy significant tax advantages due to Defendants' claimed adherence to all of the requirements of ERISA, including but not limited to the requirement that the Plan be administered in accordance with federal law, the terms of the Plan's governing documents, and in the exclusive interest of its

2

participants and beneficiaries. See ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

## STATEMENT OF FACTS

7. In 1977 Ms. Hodson began working for the ADA in New York. She continued

working there until she became disabled in 1983, as defined under the stringent criteria used by

the Social Security Administration and as acknowledged by Defendant Plan. (See Exh. B.)

8. Throughout this period, Ms. Hodson participated in the ADA's pension plan.

She has met all its participation and vesting requirements and is therefore eligible to receive

benefits.

9. The Plan is a defined contribution benefits plan, in which the ADA makes

contributions to a retirement account established for participating employees. Section 3 of the

Plan provides that upon a participating employee's attainment of normal retirement age (age 65),

the account balance of employer contributions will be used to purchase an annuity to provide a

monthly lifetime income for the participant. (See Exh. A, Plan § 3.)

10. As a vested participant in the Plan, Ms. Hodson is eligible to receive

retirement benefits when she becomes 65 in 2014.

11. When Ms. Hodson became disabled in 1983, Section 4 of the Plan also

provided that eligible participating employees who became disabled and were awarded disability

benefits by the Social Security Administration was entitled to have "Disability Annuity Credits"

contributed to their retirement accounts. Under this provision, the ADA continued to make

contributions to a disabled employee's retirement account in amounts equal to those she had been

receiving at the time she became disabled. (See Exh. A, Plan § 4.) These contributions would

3

continue so long as the employee remained disabled and received Social Security disability income benefits, ceasing only when she reached normal retirement age of 65. (See Exh. A, Plan § 4.)

12. Ms. Hodson became disabled in 1983 and soon thereafter began receiving Social Security disability benefits. She remains disabled and continues to receive Social Security disability income benefits.

13. In accordance to the Disability Annuity Credits provision of the Plan, following Plaintiff's disability, contributions to her retirement account continued to be made at the rate she had received in her last year of employment. (See Exh. B.)

14. Section 7 of the Plan provides that "no modification or amendment may be made [to the Plan] which shall materially adversely affect the benefits under the Plan of anyone receiving a retirement income whether he be an Employee or Beneficiary." (See Exh. A, Plan § 7.)

15. In 2003, Plaintiff was advised that the Plan would be significantly amended. (See Exh. C.) In a series of e-mails from Plan representatives, Ms. Hodson was repeatedly assured that the amendments would not adversely affect her benefits and that the ADA would continue to pay for her pension based upon the salary that she was making at her departure. (See Exhs. D, E & F.) In September 2003, however, Defendants informed Plaintiff that contributions to her retirement account had ceased in May 2003. (See Exh. G.) As a result, Plaintiff's retirement income will be significantly reduced and she now faces a less secure future of poverty and deprivation.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

16. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that a plan participant may bring suit in District Court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

17. Section 4.3 of the Plan provides that credits to Plaintiff's retirement account would continue to accrue during her disability, so long as she received Social Security Disability Benefits, until she turns 65. (See Exh. A, Plan § 4.)

18. According to Section 7 of the Plan, "no modification or amendment may be made [to the Plan] which shall materially adversely affect the benefits under the Plan of anyone receiving a retirement income whether he be an Employee or Beneficiary." (See Exh. A, Plan § 7.)

19. Plaintiff has met and continues to meet the requirements for receiving Disability Annuity Credits in that she remains disabled, continues to receive Social Security Disability Benefits, and is not yet 65 years old.

20. Notwithstanding Plaintiff's continuing eligibility for Disability Annuity Credits and notwithstanding the guarantee in Section 7 of the Plan that "no modification or amendment may be made [to the Plan] which shall materially adversely affect the benefits under the Plan of anyone receiving a retirement income whether he be an Employee or Beneficiary", Defendants amended the Plan to terminate Plaintiff's Disability Annuity Credits. Consequently, Defendants discontinued making contributions to Plaintiff's retirement account, thereby reducing

5

her future retirement benefits.

21. Defendants' termination of Plaintiff's Disability Annuity Credits and discontinuation of contributions to her retirement account therefore violate Plaintiff's rights under the terms of the Plan, thereby entitling her to relief under Section 502(a)(1)(B) of ERISA.

## SECOND CLAIM FOR RELIEF

22. Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), a plan participant may bring suit to recover benefits due under the plan, to enforce rights under the plan, and to clarify future rights to benefits under the plan.

23. ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3), authorizes participants to bring suit "to enjoin any act or practice which violates any provision of this subchapter [ERISA Title I] or the terms of the plan."

24. ERISA's "anti-cutback" rule prohibits any plan amendment that would reduce a participant's accrued benefits. ERISA § 204(g), 29 U.S.C. 1054(g). This prohibition is motivated by and supportive of ERISA's central object: "protecting employees' justified expectations of receiving the benefits their employers promised them." Central Laborers' Pension Fund v. Heinz, 541 U.S. 739, 743 (2004).

25. Plaintiff met, and continues to meet, the requirements for receiving credits towards her retirement account under the Disability Annuity Credit provisions of the Plan that were in effect when she became disabled in 1983.

26. In May 2003, the Plan was amended to eliminate the guaranteed continued accrual of credits provided under the Disability Annuity Credit provisions.

27. The elimination of the Disability Annuity Credit plan violates ERISA's "anti-cutback" rule.

28. Plaintiff therefore seeks an order enjoining Defendants from violating ERISA's "anti-cutback rule."

## THIRD CLAIM FOR RELIEF

29. Section 5.6 of the Plan requires that when the administrator makes an adverse determination, he must notify the participant of "the reason or reasons for the denial, the specific reference to the Plan provisions on which the denial was based, any additional information which may be necessary to perfect the claim with the reasons therefor, and the procedure for reviewing denied claims." (See Exh. A, Plan § 5.6.)

30. Regulations promulgated by the Secretary of Labor for the implementation of ERISA and having the full force of ERISA, see ERISA § 505, 29 U.S.C. § 1135, require that adverse decisions by ERISA-qualified plans must: (1) be in writing; (2) state the "specific reason or reasons for an adverse determination"; (3) specifically refer to the plan provision on which the decision is based; (4) describe what additional material is needed to perfect the claim, and; (5) inform the participant of his right to appeal the decision, and explain the procedures for doing so. 29 C.F.R. § 2560.503-1(f) & (g).

31. Plaintiff was notified that her Disability Annuity Credits would cease and that no further contributions to her retirement account would be made as of May 2003, in an e-mail dated September 8, 2003. (See Exh. G.)

32. The e-mail failed to state the specific reason for the decision, failed to

7

specifically refer to the plan provisions on which the decision was based, failed to describe what additional information Plaintiff would need to submit to perfect her claim, and failed to inform Plaintiff of her right to appeal the decision or of the procedures for doing so.

33. The notice therefore failed to comply with the notice provisions of the Plan and with the Secretary's regulations. It must therefore be vacated pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

## FOURTH CLAIM FOR RELIEF

34. Regulations promulgated by the Secretary of Labor for the implementation of ERISA and having the full force of ERISA, see ERISA § 505, 29 U.S.C. § 1135, require "every employee benefit plan [to] establish and maintain a reasonable claims procedure," and specifically require that every plan "establish and maintain a procedure by which a claimant . . . has a reasonable opportunity to appeal a denied claim . . . under which a full and fair review of the claim and its denial may be obtained." 29 C.F.R. § 2560.503-1(b) and (g)(1).

35. The procedures used in terminating Plaintiff's Disability Annuity Credits failed to comport with these standards in that the Plan failed to maintain a reasonable claims procedure, and failed to provide Plaintiff a reasonable opportunity to appeal and receive a full and fair review of the determination.

36. Instead of fulfilling these requirements, Defendants, in failing to comply with the notice requirements of the Plan described more fully in the Third Claim for Relief, supra, also failed to comply with the requirements of 29 C.F.R. § 2560.503-1(f), including, but not limited to, the requirement that participants be provided with "a description of any additional

material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."

37. Defendants' failure to comply with these legally binding rules constitutes a violation of ERISA that gives rise to a claim for relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## FIFTH CLAIM FOR RELIEF

38. ERISA Section 502(a)(3)(B), 29 U.S.C. 1132(a)(3)(B), allows participants to bring suit to obtain "appropriate equitable relief" to redress violations of Title I of ERISA or to enforce any provisions of Title I or ERISA or the terms of the plan. This section has been construed as an expansive "catch-all" provision protecting participants from inequitable results inconsistent with the remedial purposes of ERISA that would otherwise be suffered in those instances in which the courts are unable to provide appropriate relief under any other provision of ERISA. See Harris Trust & Sav. Bank v. Solomon Smith Barney, 530 U.S. 238 (2000); Howe v. Varity Corp., 516 U.S. 489 (1996).

39. In this case, the administrators and fiduciaries of an ERISA-qualified employee benefits plan have discontinued making contributions to a disabled participant's retirement account, contrary to the assurances from Plan representatives and the terms of the Plan itself that she would be provided with appropriate support in her retirement.

40. If this Court is, for any reason, unable to grant relief under any of the other claims set forth above, an equitable remedy should be provided under the aforementioned "catch-all" provision since failure to do so would result in a gross inequity inconsistent with the

remedial purposes of ERISA, including the protection of the reasonable expectations of Plan

participants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that an order be made and a judgment be

rendered (1) vacating Defendants' termination of Disability Annuity Credits to her retirement

account, (2) directing Defendants to reinstate her Disability Annuity Credit benefits as of May

2003 and continue to make payment to her retirement account of all future and past benefits

owed to her, together with interest, (3) ordering Defendants to pay the fees and costs of this

action, and (4) granting such other and further relief as this Court may deem just, equitable, and

proper.

DATED:    New York, New York
          January ⁀ , 2006

                                    Respectfully submitted,

                                    Christopher Wm. Dagg (CWD5395)
                                    LEGAL SERVICES FOR THE ELDERLY
                                    Attorneys for Plaintiff
                                    130 West 42nd Street, 17th Floor
                                    New York, New York  10036-7803
                                    Tel.  (212) 391-0120
                                    FAX  (212) 719-1939

To:    Holly Pryatel, Administrator
       American Diabetes Defined Contribution Pension Plan
       1701 North Beauregard Street
       Alexandria VA 22311

cc:    Secretary of Labor
       200 Constitution Ave. NW
       Washington DC 20210
       (by certified mail)

       Secretary of Treasury
       1500 Pennsylvania Ave. NW
       Washington DC 20220
       (by certified mail)

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

HOPE HODSON.

                                    Plaintiff,          :       VERIFICATION

            -against-

THE AMERICAN DIABETES ASSOCIATION    :
DEFINED CONTRIBUTION PENSION PLAN,   :
HOLLY PRYATEL, AS THE                :
ADMINISTRATOR OF THE AMERICAN        :
DIABETES ASSOCIATION DEFINED         :
CONTRIBUTION PENSION PLAN, AND       :
THE BOARD OF TRUSTEES THE AMERICAN   :
DIABETES ASSOCIATION DEFINED         :
CONTRIBUTION PENSION PLAN.           :
                                     :
                                    Defendants.  :
----------------------------------------------------------------X

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

            I am the Plaintiff in the above-captioned action. I have read the foregoing
complaint and hereby declare under penalty of perjury that I know the statements made therein to
be true or, where stated to be based on information and belief, believe them to be true.

Dated: New York, New York
       January 23, 2006

                                                      Hope Hodson
                                                      220 East 94th Street, Apt. 6A
                                                      New York, New York 10128

Sworn to before me this 23 day
of _January_ 2006

            NOTARY PUBLIC

MIREILLE LAFONTANT
Notary Public, State of New York
No. 01LA3 ...

12

Exhibit A

# FLEXIBLE ANNUITY PLAN

## OUTLINE

1. SPECIFICATIONS

2. DEFINITIONS

3. RETIREMENT BENEFITS

4. DISABILITY ANNUITY CREDITS

5. ADMINISTRATION AND FUNDING

6. GENERAL PROVISIONS

7. AMENDMENT AND TERMINATION

8. PRIOR PLANS

Excerpts for ECF
Sections 3, 4, 7 only

FA-2

051-210 B

1

Section 2.39 "Year(s) of Service" shall be deleted in its entirety and the following substituted in lieu thereof:

"Year(s) of Service" for purposes of determining eligibility to participate shall mean, except as hereinafter stated, a specified 12 consecutive month period during which an Employee completes at least 1,000 Hours of Service. The initial eligibility computation period shall be the twelve months' period beginning on the day the Employee first performs an Hour of Service for the Employer. If the Employee completes at least 1,000 Hours of Service during the initial eligibility computation period, each subsequent eligibility computation period shall begin on the anniversary of the day the Employee first performed an Hour of Service for the Employer. If the Employee fails to complete 1,000 Hours of Service during the initial eligibility computation period, the eligibility computation period with respect to the Employee shall then be the twelve months' period beginning on the first day of the Plan Year which begins before the end of the initial eligibility computation period referred to in the first sentence of this paragraph, and each subsequent eligibility computation period shall begin on the first day of each Plan Year thereafter. Each Employee shall be credited with a Year of Service for purposes of eligibility for the initial computation period noted above during which he completed 1,000 Hours of Service, and for each subsequent computation period after the initial period during which the Employee completes at least one Hour of Service.

Section 2.40 is hereby added as set forth below:

"Conditional Vesting" means that a Participant shall forfeit that portion of his Account Balance based on Accumulated Employer Contributions and Accumulation Units contributed under a Prior Plan if he withdraws his Accumulated Employee Contributions to a Prior Plan, regardless of whether or not the Participant has satisfied the vesting requirement pursuant to Section 1.6.

Section 2.41 is hereby added as set forth below:

"Unconditional Vesting" means that a Participant's withdrawal of his Accumulated Employee Contributions shall not result in a forfeiture of any part or all of his Account Balance, and a Participant's vested right to his Account Balance shall be determined in accordance with Section 1.6.

Section 3.1 shall be amended by changing the term "Normal Retirement Date" to the term "Normal Retirement Age" in all places where it appears.

Section 3.2(b) is hereby deleted in its entirety and the following substituted in lieu thereof:

"that he was a Participant under the Prior Plan as of the Effective Date of this Plan and is therefore 100% vested as of such Effective Date, or"

Section 3.2(c) is hereby added as set forth below:

"that he has attained age 55 but not attained his Normal Retirement Date, and has elected to receive his retirement income on an earlier Annuity Commencement Date."

Section 3.3 is hereby deleted in its entirety and the following substituted in lieu thereof:

AUTOMATIC JOINT AND SURVIVOR ANNUITY
With respect to a married Participant (and unless such Participant has elected otherwise during the election period), on and after the ERISA Compliance Date payment under the Plan shall be made in the form of a Joint and Survivor Annuity to the Participant or his Eligible Spouse, whichever is applicable, provided such Participant:

(a) begins to receive payments under the Plan on or after Normal Retirement Date, or

(b) dies on or after Normal Retirement Age while still working for the Employer, or

(c) begins to receive payments on or after the Qualified Early Retirement Age, or

(d) separates from service on or after attaining Normal Retirement Age and after satisfying the eligibility requirements for the payment of benefits under the plan and thereafter dies before beginning to receive such benefits. The Plan Administrator shall establish an election period which shall commence at least nine months prior to the Qualified Early Retirement Age and which shall include a period of at least ninety days following the furnishing of all information pertaining to the Joint and Survivor Annuity, including the terms and conditions of such annuity and the effect of any statement negating the automatic election of this annuity. The election period shall end no earlier than the Annuity Commencement Date. During the election period, a Participant to whom the Plan's Joint and Survivor Annuity would otherwise apply may elect in writing that this pension not be payable in such form. The Participant may, by written notice to the Plan Administrator, change such election at any time up to his Annuity Commencement Date.

Section 3.12 is hereby deleted in its entirety and the following substituted in lieu thereof:

## PAYMENT OF SMALL ANNUITIES

If the annuity payable with respect to a Participant in accordance with this Section 3 is less than $20 a month, or if a Participant terminates his employment and is eligible for a vested benefit determined to be less than $20 a month in the Non-Refund Life Annuity form at his Normal Retirement Date or earlier Annuity Commencement Date, a lump sum cash payment may be made to the Participant in lieu of such annuity benefit or such vested benefit, as the case may be, provided such lump sum cash payment does not exceed $1,750 (or such other maximum amount that may hereinafter be prescribed in future governmental regulations). The lump sum cash payment may be made at any time before, on, or after the Participant's Annuity Commencement Date, and shall be of an amount equal to the Participant's Account Balance based on Accumulated Employer Contributions and Accumulation Units. Any portion of the Participant's Account Balance that is based on Accumulated Employee Contributions shall be payable to the Participant in accordance with the terms of this Plan in addition to any benefit payable in accordance with this Section 3.12.

Section 3.15 is hereby amended by adding the following at the end thereof:

## MAXIMUM CONTRIBUTIONS

. . . . . . . . . . . . . . . . . . . . . . . . .

(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (iv)   COMPENSATION. The Participant's wages, salaries, fees for professional services, and other amounts received for personal services actually rendered. Compensation shall not include deferred compensation or other amounts which receive special tax benefits nor shall it include amounts contributed to this Plan on behalf of any Participant.

(f)    If the Employer's Plan attains or retains qualification and if a Participant is also covered under a qualified defined benefit plan maintained by the Employer, the decimal equivalent of the sum of the fractions determined in accordance with the following Clauses (i) and (ii) shall not exceed 1.4.

    (i)    a fraction, the numerator of which is the Participant's projected annual benefit under the defined benefit plan (determined at the end of each Plan Year) and the denominator of which is the projected annual benefit under the defined benefit plan for the Participant if such plan provided the maximum amount allowable under a defined benefit plan, and

    (ii)   a fraction, the numerator of which is the sum of the Annual Additions to the Participant's account under this Plan (determined at the end of each Plan Year) and the denominator of which is the sum of the maximum amount of the Annual Additions to such account that could have been made under a defined contribution plan for such Plan Year and each prior Plan Year.

If it is determined that the limitations set forth in this Paragraph (f) will be exceeded, the Plan Administrator shall prescribe the manner in which the Annual Additions under this Plan or the benefits under the defined benefit plan shall be reduced so that neither plan shall be disqualified under Section 415 of the Internal Revenue Code of 1954 as amended by the Employee Retirement Income Security Act of 1974.

Section 6.2 shall be amended by the addition of the following phrase at the end thereof:

"except as may be otherwise provided by law"

## Section 3. RETIREMENT BENEFITS

### 3.1 NORMAL RETIREMENT BENEFIT

Any Participant who ceases to be an Employee (as defined in Section 2) of the Employer on or after his Normal Retirement Date shall be eligible for and shall be fully vested in his Normal Retirement Benefit. Such Normal Retirement Benefit shall be a monthly income equal to the monthly amount which can be provided by applying his Account Balance to provide an annuity in accordance with the applicable table of annuity considerations in the Employer's Contract.

### 3.2 VESTED BENEFIT

Any Participant who ceases to be an Employee of the Employer prior to becoming eligible for a benefit under Section 3.1 shall be eligible for a vested benefit provided either:

(a) that he has satisfied the vesting requirement in Section 1.6 or,

(b) that he was eligible for any vested benefit under a Prior Plan as of the Effective Date of this Plan.

The Account Balance of such vested Participant shall remain to his credit until his death or earlier Annuity Commencement Date. On his Annuity Commencement Date, but not later than his 75th birthday, his Account Balance to the extent vested in accordance with this Plan shall be applied to provide an annuity in accordance with the applicable table of annuity considerations in the Employer's Contract.

### 3.3 EARLY RETIREMENT BENEFIT

Any Participant eligible for a vested benefit under Section 3.2 who has attained age 55 but has not attained his Normal Retirement Date may elect to receive his monthly retirement income on such Early Retirement Date in lieu of a benefit beginning on his Normal Retirement Date. Such Early Retirement Benefit shall equal the amount which can be provided by applying any accumulated Employee Contributions under a Prior Plan plus the vested portion of his Accumulated Employer Contributions and Accumulation Units to provide an annuity in accordance with the applicable table of annuity considerations in the Contract.

### 3.4 REFUND OF CONTRIBUTIONS

Following termination of employment prior to Normal Retirement Date or earlier Annuity Commencement Date, a Participant may elect to receive a refund of his Accumulated Employee Contributions under any Prior Plan.

If such refund of Accumulated Employee Contributions is made prior to the ERISA Compliance Date, or is made after the ERISA Compliance Date for a Plan which continues to be conditionally vested after that time, it shall result in the loss of all benefits attributable to the period for which the withdrawal is made.

If such refund of Accumulated Employee Contributions is made after the ERISA Compliance Date in a Plan which is unconditionally vested, the Participant shall receive credit for the vested portion of the Accumulated Employer Contributions and Accumulation Units allocated to him.

### 3.5 NORMAL FORM OF ANNUITY

The normal form of annuity shall be the 10 Years Certain and Continuous form which provides a monthly benefit payable during the lifetime of the retired Employee, but if the retired Employee dies prior to receiving 120 monthly payments or their equivalent, the same monthly benefit shall be paid after his death to his Beneficiary until the number of payments paid to the retired Employee and his Beneficiary shall equal 120.

### 3.6 OPTIONAL FORMS OF ANNUITY

Any Employee eligible to receive a retirement benefit may, at least one month prior to the date his benefits are due to commence, elect on NHW's prescribed form to receive a retirement benefit under one of the options named below. The amount of such benefit shall be the amount which can be provided by applying his Account Balance in accordance with the tables in the Contract. Except as provided in Option (b), under no circumstances may a method be elected that would cause more than 50% of the present value of any series of payments to go to a person other than the Participant.

(a) 15 Years Certain and Continuous Option:

A reduced monthly benefit shall be paid during the lifetime of the retired Employee, but if the retired Employee dies prior to receiving 180 monthly payments or their equivalent, the same reduced monthly benefit shall be paid after his death to his Beneficiary until the number of payments paid to the retired Employee and his Beneficiary shall equal 180.

(b) 66-2/3% Contingent Annuitant Option with Guaranteed Period of 120 Months:

A reduced monthly benefit shall be paid during the lifetime of the retired Employee and 66-2/3% of such reduced monthly benefit shall be paid after his death to one Contingent Annuitant named by him at the time he elects this option, if such Contingent Annuitant survives him, to continue until the death of the Contingent Annuitant. If after the Annuity Commencement Date both the retired Employee and the Contingent Annuitant should die before 120 monthly payments have been paid, the amount of annuity being paid immediately prior to the death of the payee shall be continued to the Beneficiary of such payee until a total of 120 monthly payments shall have been paid in the aggregate to the retired Employee, the Contingent Annuitant, and such Beneficiary. If the designated Contingent Annuitant should die prior to the Annuity Commencement Date of the Employee, the election of this option shall be cancelled automatically. Except where the Contingent Annuitant is an Eligible Spouse, this Option (b) shall not be allowed unless the present value of benefits payable to the Participant at the Annuity Commencement Date exceeds 50% of the value of benefits payable to the Participant, the Contingent Annuitant, and all Beneficiaries.

(c) Non-Refund Life Annuity

An adjusted monthly benefit payable during the lifetime of the retired Employee, with no further retirement benefit payments payable after his death.

## 3.7 DEATH BEFORE ANNUITY COMMENCEMENT DATE

Except as otherwise provided in Section 3.8, on the death of any Participant prior to his Annuity Commencement Date, his Account Balance shall be paid to his Beneficiary. The Account Balance may be paid:

(a) in a lump sum;

(b) in installments certain;

(c) as a life annuity, and

(d) partly in a single sum and partly in the form of installments certain or a life annuity.

Election of the mode of payment may be made by the Beneficiary on a form prescribed by NHW, but if no such election is made, the death benefit shall be paid in one sum.

The Account Balance will not be settled in installments or as a life annuity if the monthly payment under such mode of payment would amount to less than $5 per month.

## 3.8 SPOUSE'S ANNUITY OPTION

On and after the ERISA Compliance Date, a Participant may elect that if he shall die after the first day of the month coincident with or next following his attainment of age 55 and after his election, but before his Annuity Commencement Date, and he is survived by his Eligible Spouse, his Eligible Spouse will receive an annuity under Option (b) of Section 3.6 in the amount provided by such Participant's Account Balance, at the date of death of the Participant. If the Participant dies prior to this Annuity Commencement Date without having made an election under this Section 3.8, his Account Balance will be paid in accordance with Section 3.7.

FA-2

## 3.9 AUTOMATIC JOINT AND SURVIVOR ANNUITY

On and after the ERISA Compliance Date, a Participant who is married and:

(a) begins to receive payments under the Plan on or after Normal Retirement Age, or

(b) dies on or after Normal Retirement Age while still working for the Employer, or

(c) begins to receive payments on or after the Qualified Early Retirement Age, or

(d) separates from service on or after attaining Normal Retirement Age and after satisfying the eligibility requirements for the payment of benefits under the plan and thereafter dies before beginning to receive such benefits,

shall receive payments under this Plan in the form of a Joint and Survivor Annuity, unless the Participant has elected otherwise during the election period which shall begin on the date the Participant enters the Plan and ends on the date benefits commence. Any election hereunder shall be in writing and may be changed at any time up to a Participant's Annuity Commencement Date.

## 3.10 FIXED AND VARIABLE ANNUITIES

At least one month prior to his Annuity Commencement Date the Participant may elect to have part or all of any benefit based on Accumulated Employer Contributions and Accumulation Units payable under Sections 3.1, 3.2, or 3.3 paid as a Variable Annuity, which may vary in amount from month to month, and the balance paid as a fixed annuity the amount of which does not vary. If no such election is received by NHW, the entire annuity shall be paid as a fixed annuity.

## 3.11 SOCIAL SECURITY ADJUSTMENT

If a Participant's Annuity Commencement Date is prior to the date on which his benefits are expected to commence under the Federal Old Age and Survivors Insurance Act, such Participant may, with the consent of NHW, elect that the annuity in the form payable to him shall be adjusted actuarially so that the annuity payments received prior to the date as of which Social Security benefits are expected to commence shall be equal to the sum of the annuity payments and the expected Social Security payment on and after the date as of which Social Security benefits are expected to commence; provided however that if such reduced amount would be less than $5.50 monthly, NHW shall not pay benefits in the manner described in this Section. This election shall not be available if the Participant has elected a Variable Annuity under Section 3.10 to apply to part of all of his annuity benefit.

## 3.12 PAYMENT OF SMALL ANNUITIES

If any annuity payable under this Section 3 is equal to less than $60 per year, or if any Participant terminates his employment and is eligible for a vested benefit determined to be less than $60 yearly in the Normal Form at Normal Retirement Date, or earlier Annuity Commencement Date, NHW may, at its option, under rules applicable to all Participants hereunder, pay to the Participant his Account Balance in lieu of the monthly payments thereof. NHW may make such payment at any time, before, on or after the Annuity Commencement Date.

## 3.13 SINGLE SUM PAYMENT

If a Participant, his designated Contingent Annuitant and any named Beneficiary die prior to receiving the guaranteed number of payments under one of the options specified in Section 3.8, NHW may make a single sum payment, the value of which is to be determined by NHW, in lieu of the balance of the payments otherwise due.

## 3.14 DETERMINATION DATE

Any benefit payable to any Participant under the terms of this Plan or the Prior Plan, shall be determined in accordance with the terms of the Plan as in effect on the date of such Participant's date of termination of employment, and shall not be affected by any subsequent amendment unless such amendment specifically states that it applies to such prior Employees.

15 MAXIMUM CONTRIBUTIONS

This Section shall become effective on the ERISA Compliance Date.

(a) If an Employer does not maintain any other qualified plan, the amount of Annual Additions which may be allocated under this Plan on a Participant's behalf for a Limitation Year shall not exceed the lesser of the Maximum Permissible Amount or any other limitation contained in this Plan.

(b) Prior to the determination of the Participant's actual Compensation for a Limitation Year, the Maximum Permissible Amount may be determined on the basis of the Participant's estimated annual Compensation for such Limitation Year. Such estimated annual Compensation shall be determined on a reasonable basis and shall be uniformly determined for all Participants similarly situated. Any Employer Contributions (including allocation of forfeitures) based on estimated annual Compensation shall be reduced by any Excess Amounts carried over from prior years.

(c) As soon as is administratively feasible after the end of the Limitation Year, the Maximum Permissible Amount for such Limitation Year shall be determined on the basis of the Participant's actual Compensation for such Limitation Year.

(d) If, pursuant to paragraph (c), there is an Excess Amount with respect to a Participant for a Limitation Year, such Excess Amount shall be disposed of as follows:

(i) In the event that the Participant is in the service of the Employer which is covered by the Plan at the end of the Limitation Year, then such Excess Amounts must not be distributed to the Participant, but shall be reapplied to reduce future Employer Contributions (including any allocation of forfeitures) under this Plan for the next Limitation Year (and for each succeeding year, as necessary) for such Participant, so that in each such year the sum of actual Employer Contributions (including any allocation of forfeitures) plus the reapplied amount shall equal the amount of Employer Contributions (including any allocation of forfeitures) which would otherwise be allocated to each Participant's account.

(ii) In the event that the Participant is not in the service of the Employer which is covered by the Plan at the end of the Limitation Year, then such Excess Amounts must not be distributed to the Participant, but shall be reapplied to reduce future Employer Contributions (including allocation of any forfeitures) for all remaining Participants.

(e) The following terms are defined for purposes of this Section 3.16:

(i) Annual Additions. The sum of the following amounts allocated on behalf of a Participant for a Limitation Year:

(a) all Employer Contributions, and

(b) all forfeitures.

For the purposes of this article, amounts reapplied to reduce Employer Contributions under paragraph (d) shall also be included as Annual Additions.

(ii) Excess Amount. The excess of the Participant's Annual Additions for the Limitation Year over the Maximum Permissible Amount, less loading and other administrative charges allocable to such excess.

(iii) Limitation Year. A calendar year (or any other 12 consecutive month period adopted for all plans of the Employer pursuant to a written resolution adopted by the Employer).

(iv) Maximum Permissible Amount. For a Limitation Year, the Maximum Permissible Amount with respect to any Participant shall be the lesser of:

(1) $25,000 (or such larger amount as may be prescribed by the Secretary of the Treasury or his delegate, or,

(2) 25 percent of the Participant's Compensation for the Limitation Year.

11

3.16 REEMPLOYMENT

Any Participant .

(a) who terminates employment with the Employer prior to the time that he if fully vested in the Accumulated Employer Contributions and Accumulation Units,

(b) is subsequently reemployed by the Employer, and

(c) who becomes fully vested in accordance with the provisions of this Plan after such reemployment shall have any amounts forfeited upon his prior termination of employment restored to his Account Balance. The amount restored shall be the amount forfeited unadjusted for any gains or losses in the value of an Accumulation Unit and unadjusted for any interest earnings on assets in NHW's General Account subsequent to the forfeiture.

3.17 EMPLOYER CONTRIBUTIONS

A Participant whose employment is terminated after the beginning of a calendar month shall share in Employer Contributions for that month.

FA-2

## Section 4. DISABILITY ANNUITY CREDIT

### 4.1 CONDITIONS FOR ANNUITY CREDIT

If a Participant ceases active work before attaining age 64 and 6 months, because of disability, and is awarded a disability income by the Social Security Administration, NHW, upon receipt of such award, shall credit to such Participant a Disability Annuity Credit as described below for the period beginning the later of six months after disability commenced or the effective date of Social Security disability income payments and during the continuance of such disability and the continued receipt of Social Security disability income payments.

### 4.2 LIMITATIONS

No annuity shall be credited to or on behalf of a Participant:

(a) for any day after

    (i) the first day of the month coincident with or next following his attainment of age 65, or

    (ii) his Annuity Commencement Date,

  whichever occurs first;

(b) for any period during which he was not eligible to receive a disability income from Social Security;

(c) for any day occuring more than 90 days after the date on which NHW requested the Participant to furnish satisfactory proof of the continuance of a disability income from Social Security, unless such proof is furnished within such 90 day period;

(d) for any period more than 180 days prior to the date written proof of such disability income from Social Security was received by NHW.

### 4.3 DISABILITY ANNUITY CREDIT

With respect to the period during which such disability is established on behalf of a Participant, NHW shall provide an annuity credit equal to the annuity which would have been payable:

(a) had the Participant continued during such period to be employed by the Employer at a salary equal to his annual rate of Compensation on the date the Participant ceased active work by reason of such disability, but not more than 110% of the annual rate of Compensation shown on the records of NHW as being in effect one year prior to such date, or if none was recorded as of that date, the earliest recorded Compensation within such prior year; and

(b) had the Participant continued during such period to be a Participant in the Plan as in effect on the date he ceased active work because of such disability, with contributions based on such Compensation;

(c) had such contributions been allocated to the General Account and accumulated at interest until the earlier of the Participant's attainment of age 65 or his earlier Annuity Commencement Date, at which time the Participant's Account Balance would be applied to purchase an annuity in the normal form under the benefit formula and provisions of the Plan in effect on the date the Participant ceased active work, due to disability, determined on the basis of the purchase rates in effect as of the date such annuity is due to commence.

Upon the Participant's attainment of age 65 or earlier Annuity Commencement Date, NHW shall pay him an annuity as provided under the terms of this section.

Section 7. AMENDMENT AND TERMINATION

### 7.1 AMENDMENT

NHW shall have the right at any time to modify or amend in whole or in part any or all of the provisions of the Plan and the Employer shall be deemed to have consented to any such amendments made by NHW. The Employer may amend only the options in the Specifications. The right of NHW is subject to the conditions

(a) that no modification or amendment may be made which shall materially adversely affect the benefits under the Plan of anyone receiving a retirement income whether he be an Employee or Beneficiary.

(b) that no part of the assets of the Plan shall, by reason of any modification or amendment, be used for, or diverted to, purposes other than for the exclusive benefit of Employees and Beneficiaries under the Plan, and

(c) no amendment to the vesting schedule in Section 1.6 shall deprive a Participant of his nonforfeitable right to Accumulated Employer Contributions and Accumulation Units accrued to the date of the amendment. Furthermore, if the vesting schedule of the Plan is amended, each Participant with at least 5 Years of Service with the Employer may elect, within a reasonable period after the adoption of the amendment, to have his nonforfeitable percentage computed under the Plan without regard to such amendment. The period during which the election may be made shall commence with the date the amendment is adopted and shall end on the later of:

(i) 60 days after the amendment is adopted;

(ii) 60 days after the amendment becomes effective, or

(iii) 60 days after the Participant is issued written notice of the amendment by the Employer.

### 7.2 TERMINATION

The Plan may be terminated by the Employer, but only upon condition that such action be taken as shall render it impossible at any time prior to the satisfaction of all liabilities with respect to Employees and Beneficiaries for any part of the corpus of the funds or income of the Plan to be at any time used for, or diverted to purposes other than for the exclusive benefit of Participants and Beneficiaries.

Upon termination or partial termination of the Plan, each Participant's right to the Accumulated Employer Contributions and Accumulation Units credited to his account at such time, shall be nonforfeitable.

### 7.3 ALLOCATION

If the Plan is terminated, the funds of this Plan held by NHW, which are then allocated to individual Participants, former Participants or Beneficiaries, shall remain allocated to such persons except to the extent that Section 4044 of the Employee Retirement Income Security Act of 1974 requires any benefits to be cancelled or funds to become unallocated. NHW will determine cancellation values and credits to unallocated funds in the case of any benefits to be cancelled and any funds to be unallocated.

There shall be no liability or obligation on the part of the Employer to make any further contributions under the Plan toward the provision of such benefits in the event of termination of this Plan, except as may be required by the Employee Retirement Income Security Act of 1974.

### 7.4 MERGERS OF PLANS

On and after the ERISA Compliance Date, Plan assets may not be merged or consolidated with or transferred to the assets of any other retirement plan unless:

(a) each Participant would be entitled to receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (determined as if this Plan had then terminated), and

(b) resolutions of the Board of Directors of the Employer, or of any new or successor employer of the affected Participants, shall authorize such transfer of assets; and, in the case of the new or successor employer of the affected Participants, its resolutions shall include an assumption of liabilities with respect to such Participants' inclusion in the new employer's plan.

For purposes of this Section 7.4, the amount of benefit which each Participant is entitled to receive immediately before a merger shall be the benefit provided by the funds allocated to each Participant determined as if this Plan had terminated on the day immediately preceding a merger.

The amount of benefit each Participant is entitled to receive immediately after a merger shall be determined under the applicable provisions of the merged plan on the assumption that the merged plan terminates the day after the merger and the funds held by the merged plan are allocated to Participants in accordance with the provisions of Section 4044 of the Employee Retirement Income Security Act of 1974.

## AMENDMENT TO THE FLEXIBLE ANNUITY PLAN FA-2

Effective as of the effective dates stated herein, the Employer, with the consent of Mutual of America Life Insurance Company, hereby amends its Pension Plan as stated herein, unless the Pension Plan already contains one or more of such amendments as hereinafter stated that were made in order to comply with the Tax Equity and Fiscal Responsibility Act of 1982, the Deficit Reduction Act of 1984, the Retirement Equity Act of 1984, or any combination thereof, in which case, if there is any conflict between the language of the amendment contained herein and the language of the earlier amendment, the earlier amendment shall govern. However, notwithstanding anything to the contrary herein, no amendment shall be deemed to be effective before the Effective Date of the Plan.

Effective January 1, 1983, the Plan is amended as follows:

Section 3.15 is hereby amended by the deletion of that section in its entirety and by substituting the following in lieu thereof:

3.15 Maximum Contributions

(a)   In no event shall contributions that arise from the amounts indicated in Section 1.5 be allocated to a Participant's Accounts resulting in an Annual Addition to such Accounts for any Limitation Year in excess of a Maximum Permissible Amount equal to the lesser of

(i)   $30,000, or, beginning January 1, of each calendar year, subsequent to 1987, such greater amount as may be prescribed by the Secretary of the Treasury or his delegate, multiplied, if a short Limitation Year is created because of an amendment that changes the Limitation Year to a different consecutive twelve months' period, by a fraction that has, as its numerator, the number of months in the short Limitation Year and, as its denominator, twelve,

(ii)   25% of the Participant's Compensation for such Limitation Year.

(b)   If the Employer does not maintain, in addition to this Plan, another Qualified Plan under which a Participant in this Plan is included, the amount of Annual Additions that may be allocated under this Plan on a Participant's behalf for any Limitation Year may not exceed the lesser of the Maximum Permissible Amount and any other limitation contained in this Plan. If the Employer's Contributions that would otherwise be allocated to the Participant's Accounts would cause the Annual Additions for the Limitation Year to exceed the Maximum Permissible Amount, the amount allocated will be reduced so that the Annual Additions for the Limitation Year will equal the Maximum Permissible Amount.

(c)   If the Employer maintains, in addition to this Plan, one or more

091-210

defined benefit plans qualified under Section 401(a) of the Code, and a Participant in this Plan is also a participant in one or more of such defined benefit plans, the sum of the defined benefit plan fraction with respect to the Participant, as defined below, and the defined contribution plan fraction with respect to the Participant, as defined below, shall not exceed 1.0 for any Limitation Year. The defined benefit plan fraction shall have, as its numerator, a Participant's Projected Annual Benefit at the end of the Limitation Year under all defined benefit plans (whether or not terminated) maintained by the Employer, and, as its denominator, the lesser of:

(i) 125% of the dollar limitation in effect for the Limitation Year under Section 415(b)(1)(A) of the Code, and

(ii) 140% of the Participant's average Compensation for the three consecutive calendar years while a Participant in this Plan in which his Compensation was highest.

The defined contribution plan fraction is computed at the end of the Limitation Year and shall have, as its numerator, the sum of the annual additions made to the Participant's accounts under all defined contribution plans (whether or not terminated) maintained by the Employer, during the current and all preceding Limitation Years, and, as its denominator, the sum of the Maximum Aggregate Amounts for the current and all preceding Limitation Years of service with the Employer (regardless of whether a defined contribution plan was maintained by the Employer). The Maximum Aggregate Amount during any Limitation Year is the lesser of:

(i) 125% of the dollar limitation in effect for the Limitation Year under Section 415(c)(1)(A) of the Code, and

(ii) 35% of the Participant's Compensation for such Limitation Year.

(d) The following terms are defined for purposes of this Section 3.15:

(i) The term 'Limitation Year' means a calendar year or any other consecutive twelve months' period adopted for all plans of the Employer pursuant to a written resolution adopted by the Employer.

(ii) The term 'Annual Additions' means the sum of (A) all Employer's contributions that arise from the amounts indicated in Section 1.5, (B) all forfeitures, and (C) any amounts reapplied to reduce Employer's contributions, that are allocated on behalf of a Participant for a Limitation Year.

(iii) The term 'Compensation' means the Participant's wages, salaries, fees for professional services, and other amounts

received for personal services actually rendered. Compensation shall not include deferred compensation or other amounts which receive special tax benefits, nor shall it include amounts contributed to this Plan on behalf of any Participant.

(iv)   The term 'Projected Annual Benefit' means a Participant's annual benefit under a defined benefit plan (adjusted on the basis of reasonable actuarial assumptions, if such benefit is payable in a form other than a straight life annuity or a qualified joint and survivor annuity, to an amount actuarially equivalent, when computed on the basis of mortality and interest assumptions determined by Mutual, to a straight life annuity), assuming that the Participant will continue in the employment of the Employer to his current age or his Normal Retirement Age, whichever is later, and that the Participant's Compensation for the Limitation Year, and all other relevant factors used to determine benefits under the defined benefit plan, will remain constant for all future Limitation Years.

Effective January 1, 1984, the Plan is further amended as follows:

1.   Section 2.20 is hereby deleted in its entirety and the following substituted in lieu thereof:

2.20   "Mutual" means Mutual of America Life Insurance Company

In connection with this change, the term "NHW", wherever it appears in the Plan, is deleted and the term "Mutual" is substituted in lieu thereof.

2.   Section 2.39 is hereby deleted in its entirety and the following substituted in lieu thereof:

2.39   "Year(s) of Service" for purposes of determining eligibility to participate shall mean, except as hereinafter stated, a specified 12 consecutive month period during which an Employee completes at least 1,000 Hours of Service. The initial eligibility computation period shall be the twelve months' period beginning on the day the Employee first performs an Hour of Service for the Employer and each subsequent eligibility computation period shall be:

(a)   if Section 1.4 indicates one year or less as the minimum number of Years of Service required for eligibility, the twelve months' period measured from the first day of the Plan Year that begins before the end of the initial eligibility computation period; and

(b)   if Section 1.4 indicates more than one year as the minimum number of Years of Service required for eligibility, the twelve months' period measured from the

anniversary of the day the Employee first performed an Hour of Service for the Employer. If Clause (a) of the preceding paragraph applies under this Plan, and if an Employee completes 1,000 Hours of Service in both the initial eligibility computation period and the first Plan Year which begins before the end of the initial eligibility computation period, such Employee shall be credited with two Years of Service for purposes of eligibility.

3.   Section 3.1 is amended by changing the first sentence to read as follows:

Any Participant who attains his Normal Retirement Age shall be eligible for and fully vested in a Normal Retirement Benefit.

4.   Section 9 is hereby added as set forth below:

Section 9.   TOP-HEAVY PLAN PROVISIONS

9.1   General

The provisions of this Section shall apply only if (a) this Plan is a qualified plan and (b) this Plan is or becomes Top-Heavy in any Plan Year that begins after December 31, 1983.

9.2   Applicable Conditions

The limitations hereinafter set forth in this Section 9 shall become effective for a Plan Year if:

(a)   The top-heavy ratio for this Plan exceeds 60% and this Plan is not part of any Required Aggregation Group or Permissive Aggregation Group;

(b)   this Plan is part of a Required Aggregation Group but is not part of a Permissive Aggregation Group, and the top-heavy ratio for the Required Aggregation Group exceeds 60%; or

(c)   this Plan is part of a Required Aggregation Group and part of a Permissive Aggregation Group, and the top-heavy ratio for the Permissive Aggregation Group exceeds 60%.

9.3   Top-Heavy Ratio

(1)   If the Employer maintains one or more defined contribution plans (including any simplified employee pension plan) but the Employer has never maintained a defined benefit plan in which a Participant in this Plan is or could possibly become a participant, the top-heavy ratio shall be a fraction that has:

wherever it appears in said Clause (b).

(d) The term "Determination Date" means (i) for the first Plan Year of this Plan, the last day of that Plan Year, and (ii) for any subsequent Plan Year, the last day of the preceding Plan Year.

(e) The term "Required Aggregation Group" means (i) each qualified plan of the Employer under which at least one Key Employee is a participant, and (ii) any other qualified plan of the Employer which enables a plan described in Sub-clause (i) of this Clause (e) to meet the requirements of sections 401(a)(4) and 410 of the Code.

(f) The term "Permissive Aggregation Group" means the Required Aggregation Group defined in the immediately preceding Clause (e) plus any other plan or plans of the Employer which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of sections 401(a)(4) and 410 of the Code.

(g) The term "Present Value" means the present value of an accrued benefit under a defined benefit plan, determined as the lump sum actuarial equivalent of such accrued benefit.

(h) The term "Super Top-Heavy Plan" means a Top-Heavy Plan under which the limitations set forth in this Section 9 would become effective if the percentage "60%" wherever it appears in Section 9.2 were replaced by the percentage "90%".

(i) The term "Applicable Percentage" means 3% (or if this Plan is not a Super Top-Heavy Plan, any greater percentage not in excess of 4% that the Employer may select).

Effective August 23, 1984, the plan is further amended as follows;

Section 3.7 is hereby deleted in its entirety and the following substituted in lieu thereof:

3.7 Death Benefit

A death benefit equal to 100% of the value of the Participant's Accounts shall become payable under this Plan upon the death of a Participant who dies before his Annuity Commencement Date and before the date on which a distribution of the Participant's Accounts is or can be made in accordance with Paragraph (1) or Paragraph (2) of Section 3.5.

If a Participant is married at the time of his death, the death benefit shall be paid to the Participant's Eligible Spouse unless the election described in the fourth paragraph of this Section 3.7 is then in effect with respect to the Eligible Spouse.

If the Participant is not married at the time of his death, or, if
the Participant is married at the time of his death and the election
described in the fourth paragraph of this Section 3.7 is then in
effect with respect to the Participant's Eligible Spouse, the death
benefit shall be paid to the Beneficiary designated to receive such
benefit.

At any time during an election period that shall begin on the earlier
of (i) the first day of the Plan year in which the Participant
attains his thirty-fifth birthday and (ii) the Participant's date of
termination of employment with the Employer, and that shall end at
the date of the Participant's death, a Participant's Eligible Spouse
may elect to waive receipt of the death benefit described in this
Section 3.7, provided that, in no event, shall any such election
become effective before the first day of the Plan Year in which the
Participant attains his thirty-fifth birthday. Such election (i) is
to be made in writing on a form provided by the Plan Administrator,
(ii) is to be witnessed by a plan representative or a notary public,
and (iii) shall be effective only with respect to the person who is
the Participant's Eligible Spouse at the time of the election.

The Plan Administrator shall furnish each Participant with a written
explanation of the death benefit described in this Section 3.7 in
such terms and in such manner as would be comparable to the
explanation described in the last paragraph of Paragraph (i) of
Section 3.6. Such explanation shall be furnished to the Participant
within the period that begins on the first day of the Plan Year in
which the Participant attains his thirty-second birthday and ends on
the last day of the Plan Year immediately preceding the Plan Year in
which the Participant attains his thirty-fifth birthday unless (i)
the Participant enters the employment of the Employer after the end
of such period, in which case the explanation will be furnished to
the Participant on his date of employment, or (ii) the Participant
terminates his employment with the Employer before the beginning of
such period, in which case the explanation will be furnished to the
Participant on his date of termination of employment.

The death benefit described in this Section 3.7 shall be paid in a
single sum except that the Eligible Spouse, if applicable, or, if not
applicable, the Beneficiary designated in writing by the Participant
to receive such death benefit, may elect, on Mutual's prescribed
form, that such death benefit be paid wholly or in part on any one of
the forms of annuity described in Section 3.6.

Effective January 1, 1985, the Plan is further amended as follows:

1.   If the Plan provides that the minimum age required for eligibility is later
     than age 21, then Section 1.3 is hereby deleted in its entirety and the
     following substituted in lieu thereof:

4.  Section 3.2(c) is deleted in its entirety and the following substituted in lieu thereof:

    (c) that he has attained age 55.

5.  Section 3.5 is hereby deleted in its entirety and the following substituted in lieu thereof:

    3.5  Determinaton of Form of Payment

    (1)  A Participant who is married and who begins to receive payments under this Plan on or after his Qualified Early Retirement Age shall have his retirement benefit paid in the form of a monthly annuity on the Joint and Survivor Annuity form described in Paragraph (a) of Section 3.6 with the Participant's Eligible Spouse as the joint annuitant. However, such Participant, at any time during the election period described in Paragraph (3) of this Section 3.5 may elect not to have his retirement benefit paid in this manner and instead may elect to have his retirement benefit paid in one of the following alternative forms of payment:

        (a)  as a monthly annuity on the Joint and Survivor Annuity form described in Paragraph (a) of Section 3.6 with a person other than the Participant's Eligible Spouse named as the joint annuitant,

        (b)  as a monthly annuity on the 10 Years Certain and Continuous Annuity form described in Paragraph (b) of Section 3.6,

        (c)  as a monthly annuity on the 15 Years Certain and Continuous Annuity form described in Paragraph (c) of Section 3.6,

        (d)  as a monthly annuity on the Full Cash Refund Annuity form described in Paragraph (d) of Section 3.6,

        (e)  as a monthly annuity on the Life Annuity form described in Paragraph (e) of Section 3.6, or

        (f)  as a single sum cash payment under the Lump Sum Option described in Paragraph (f) of Section 3.6.

    The Participant's Election not to have his retirement benefit paid on the Joint and Survivor Annuity form is to be made in writing on a form provided by the Plan Administrator. Such election shall not take effect unless:

        (a)  the Participant's Eligible Spouse consents in writing to such election and such consent acknowledges the effect of

such election and is witnessed by a plan representative or a notary public, or

(b) it is established to the satisfaction of the Plan Administrator that the consent required of the Eligible Spouse may not be obtained because there is no Eligible Spouse, because the Eligible Spouse cannot be located, or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe.

Any consent by an Eligible Spouse pursuant to the preceding sentence must be made within the 90 days' period immediately preceding the Participant's Annuity Commencement Date, and such consent shall be effective only with respect to the person who is the Participant's Eligible Spouse at the time of the Participant's election.

The Participant has the right to revoke the election described in the second paragraph of this Paragraph (1) at any time before his Annuity Commencement Date.

On or before the later of (i) the Participant's date of employment with the Employer and (ii) the date that is nine months before the Participant's Qualified Early Retirement Age, the Plan Administrator shall furnish the Participant with a written explanation of:

(a) the terms and conditions of the Joint and Survivor Annuity form,

(b) the Participant's right to make, and the effect of, the election described in the second paragraph of this Paragraph (1),

(c) the rights of the Participant's Eligible Spouse with respect to said election, and

(d) the Participant's right to make, and the effect of, a revocation of said election.

(2) A Participant who is not married and who begins to receive payments under this Plan on or after his Qualified Early Retirement Age shall have his retirement benefit paid in the form of a monthly annuity on the 10 Years Certain and Continuous Annuity form described in Paragraph (b) of Section 3.5, unless the Participant elects, at any time during the election period described in Paragraph (3) of this Section 3.5, to have his retirement benefit paid in one of the following alternative forms of payment:

(a)  as a monthly annuity on the Joint and Survivor Annuity form described in Paragraph (a) of Section 3.6,

(b)  as a monthly annuity on the 15 Years Certain and Continuous Annuity form described in Paragraph (c) of Section 3.6,

(c)  as a monthly annuity on the Full Cash Refund Annuity form described in Paragraph (d) of Section 3.6,

(d)  as a monthly annuity on the Life Annuity form described in Paragraph (e) of Section 3.6,

(e)  as a single sum cash payment under the Lump Sum Option described in Paragraph (f) of Section 3.6.

(3)  The election period referred to in Paragraphs (1) and (2) of this Section 3.5 shall be established by the Plan Administrator and shall begin as of the later of (i) a Participant's date of employment with the Employer and (ii) a date that is at least 90 days before a Participant's Qualified Early Retirement Age.

6.  Section 3.6 is hereby deleted in its entirety and the following substituted in lieu thereof:

3.6  Method of Payment

The methods of payment available under this Plan are as follows, provided that, if this Plan is a Qualified Plan, if a joint annuitant or a Beneficiary is other than the Participant's Eligible Spouse, and if the value of the Participant's benefit under the form of annuity elected would be less than 50% of the value of his benefit that would be payable on the 10 Years Certain and Continuous Annuity form, such benefit on the form of annuity elected shall be adjusted so that the value of the Participant's benefit under the form elected shall be equal to 50% of the value of the Participant's benefit on the 10 Year Certain and Continuous Annuity form.

(a)  Joint and Survivor Annuity

The Joint and Survivor Annuity form provides for monthly payments continuing to the first day of the month in which the death of the survivor of the Participant and his joint annuitant occurs or the end of the certain period of 120 months, whichever is later. Such monthly payments shall be in an amount actuarially equivalent, when computed on the basis of mortality and interest assumptions determined by Mutual, of the value of the Participant's Accounts as of his Annuity Commencement Date. If the Participant's death occurs before the death of his joint annuitant, payments of an amount equal

to 66-2/3% of the monthly payment to the Participant shall be continued to the joint annuitant. If, before the end of the certain period, both the Participant and his joint annuitant die, payments of an amount equal to the monthly payment paid immediately before the death of the survivor of the Participant and his joint annuitant shall be continued to the end of such period to the Beneficiary designated to receive such payments in accordance with Section 2.7. If this form of annuity is elected by a Participant, the joint annuitant shall be the person named by the Participant at the time he makes such election. If the joint annuitant should die before the Participant's Annuity Commencement Date, the election of this form of annuity shall automatically be cancelled.

(b) 10 Years Certain and Continuous Annuity

The 10 Years Certain and Continuous Annuity form provides for monthly payments continuing to the first day of the month in which the Participant's death occurs or the end of the certain period of 120 months, whichever is later. If the Participant dies before the end of the certain period, payments in the same amount shall be continued to the end of such period to the Beneficiary designated to receive such payments in accordance with Section 2.7.

(c) 15 Years Certain and Continuous Annuity

The 15 Years Certain and Continuous Annuity form provides for monthly payments continuing to the first day of the month inwhich the Participant's death occurs or the end of the certain period of 180 months, whichever is later. If the Participant dies before the end of the certain period, payments in the same amount shall be continued to the end of such period to the Beneficiary designated to receive such payments in accordance with Section 2.7.

(d) Full Cash Refund Annuity

The Full Cash Refund Annuity form provides for monthly payments to the Participant continuing to the first day of the month in which his death occurs. Upon his death, the Beneficiary designated to receive payments in accordance with Section 2.7 shall be entitled to receive, in cash, the excess, if any, of 100% of the value of the Participant's Accounts as of his Annuity Commencement Date over the aggregate amount of payments made to the Participant.

(e) Life Annuity

The Life Annuity form provides for monthly payments to the Participant continuing to the first day of the month in which

· his death occurs.

(f) Lump Sum Option

The Lump Sum Option provides for a single sum cash payment to
the Participant equal to 100% of the value of the Participant's
Accounts as of his Annuity Commencement Date.

7. Section 3.8 and 3.9 are hereby deleted in their entirety.

In connection with these deletions, Sections 3.10 through 3.17 shall be
renumbered 3.8 through 3.15 and all references to such Sections throughout
the Plan shall be adjusted accordingly.

8. Section 3.10 is hereby deleted in its entirety and the following
substituted in lieu thereof:

3.10 Small Benefit Payments

If, at a Participant's Annuity Commencement Date or at any earlier
date on which a Participant terminates his employment with the
Employer, the value of the amount in the Participant's Accounts
attributable to Employer's contributions does not exceed (a) before
January 1, 1985, $1,750, or (b) on and after January 1, 1985, $3,500
(or such other maximum amount that may thereafter be prescribed in
future governmental regulations), a lump sum cash payment may be made
to the Participant of an amount equal to the entire vested portion of
such Participant's Accounts, and the non-vested portion will be
treated as a forfeiture. The lump sum cash payment may be made at
any time before, on, or after the Participant's Annuity Commencement
Date. The amount, if any, in the Participant's Accounts attributable
to Participant's contributions shall be payable to the Participant in
accordance with the terms of this Plan in addition to the amount
payable in accordance with this Secton 3.10.

If a Participant terminates employment and, upon such termination of
employment, receives a lump sum cash payment of less than the amount
in his Accounts attributable to Employer's contributions, and if the
Participant is later reemployed and again becomes a Participant under
this Plan, the portion of the Participant's Accounts attributable to
Employer's contributions will be restored to the amount therein on
the date the lump sum cash payment was made, provided the Participant
repays, no later than the end of the two years' period beginning with
his date of reemployment or the end of the five years' period
beginning with the date the lump sum cash payment was made, whichever
is earlier, the lump sum cash payment plus interest at the rate of 5%
a year, compounded annually, from the date the lump sum cash payment
was made to the date of repayment.

9. Section 5.1 is hereby deleted in its entirety and the following
substituted in lieu thereof:

Exhibit B

# MUTUAL OF AMERICA

666 FIFTH AVENUE, NEW YORK, NY 10103 • (212) 399-1600

Administrative Services Division

February 5, 1985

Ms. Hope Hodson
119 West 95th St.
New York, NY  10025

Re:
> Disability Claim # 56268
> Employer # 051-210-B
> Employee #

Dear  Ms. Hodson

We are pleased to inform you that your claim for Disability Annuity
Credits under your pension plan has been approved. Therefore, you will
accrue credits which will increase your income payable at retirement,
without further plan contributions, for as long as you qualify for
Social Security disability benefits. If such benefits should cease,
please notify us promptly.

It has been a pleasure to have been of service to you. If you have
any questions, please let us know.

Sincerely yours,

Dawn Tarallo

Dawn Tarallo
Manager
Health Claims Department

DC/tm
cc: American Diabetes Association, Inc.

1602.A

# MUTUAL OF AMERICA

666 FIFTH AVENUE, NEW YORK, NY 10103 · (212) 399-1600

Administrative Services Division

January 8, 1985

Ms. Hope Hodson
.119 West 95th Street
New York, NY   10025

                              Re:   Disability Claim # 56268
                                    Employer.        # 051-210B
Dear   Ms. Hodson:                  Employee         #

We are pleased to inform you that your claim for waiver of Group Life Insurance
premiums has been approved.

In accordance with your benefit program, your Group Life Insurance coverage in
the amount of $21,510.00  will remain in force while you are disabled.  Premiums
for this coverage will be waived during the period of your disability.

Your pension plan also provides for the accrual of pension benefit credits during
the period in which you are entitled to Social Security disability payments.  Your
eligibility for these credits will be considered following our review of the Social
Security decision as to your entitlement to benefits.

In order to remain eligible for the above benefits, you will be required from time
to time to furnish acceptable evidence of your continuing disability.  If you have
any questions, please contact

                              Sincerely yours,

                              Dawn Tarallo, Manager
                              Health Claims Department

cc:  American Diabetes Association, Inc.

Exhibit C

MUTUAL OF AMERICA
LIFE INSURANCE COMPANY

MUTUAL OF AMERICA

320 PARK AVENUE
NEW YORK NY 10022-6839
800 468 3785
800 241 4081 FAX

April 28, 2003

WILLIAM S. CONWAY CLU ChFC
EXECUTIVE VICE PRESIDENT
MARKETING & CORPORATE COMMUNICATIONS

Ms. Hope Hodson
220 E 94th St Apt 6A
New York NY 10128-3902

Dear Ms. Hodson:

Your former employer, the American Diabetes Association (ADA), recently decided to offer its Pension Plan through a service provider other than Mutual of America.

In the near future, any existing assets in your Pension Plan account with Mutual of America will be *automatically transferred* to the new provider, *unless you decide to keep your assets with Mutual of America.* The only way to keep your assets with Mutual of America at this time is by rolling the assets over to an Individual Retirement Annuity (IRA) with Mutual of America.

Leaving your assets with us ensures that you will continue to receive the same quality services to which you've become accustomed, including quarterly statements, investment newsletters, toll-free 800-line services, a Web site for 24/7 account information, and personal service from salaried representatives in a Regional Office near you.

By rolling over to Mutual of America's IRA, you would also be able to continue to invest in the same investment alternatives that are currently available to you under your Group Annuity Contract, as well as Mutual of America's Interest Accumulation Account. Investment performance in the investment alternatives is not guaranteed and contributions may decrease as well as increase in value. Funds placed in our Rollover IRA's Interest Accumulation Account will be credited with a fixed rate of interest that we change from time to time. The current effective annual yield is 3.75%.

If you would like to discuss rolling over your Pension Plan assets to a Mutual of America IRA, please call Tyrone A. Golatt in our NY North Regional Office at (212) 307-7564. We'll provide you with a prospectus, which contains complete information on all charges and expenses for this variable accumulation annuity contract, including separate account and portfolio company expenses, and an annual contract fee. Please read it carefully before you invest. Please also note that a variable accumulation annuity contract provides no additional tax-deferral benefits to an IRA. You should, therefore, carefully consider the annuity contract's other features before making a decision.

For 26 years, Mutual of America has been privileged to help meet the retirement needs of the American Diabetes Association's employees. We take very seriously the confidence you have placed in us, and look forward to providing continued service to you in the years ahead.

Sincerely,

William S. Conway

Mutual of America Life Insurance Company is a Registered Broker-Dealer.

Exhibit D

Subj:   Mutual of America
Date:   6/19/2003 9:38:16 AM Eastern Standard Time
From:   EHouse@diabetes.org
To:     HEHodson@aool.com

Dear Ms. Hodson:

I am currently working on your retirement and life insurance questions.

I have made sure to write the contract for the new plan the same as the Mutual of
America plan, including all of the same disability requirements. I have confirmed that
they will accept all of your previous criteria. I would like to review the specifics with you
on the phone, if that is possible.

I am still working on confirming the terms of the life insurance policy from Mutual of
America. They are currently researching your information.

I did want to touch base with you, so that you know who to contact regarding your
benefits. Thank you and take care.

Sincerely,

Eileen C. House - National Director,
Compensation, Benefits & Systems
American Diabetes Association,
1701 North Beauregard Street
Alexandria, VA 22311
(703) 299-2057

Subj: Re: Mutual of America
Date: 5/16/2003 4:08:28 PM Eastern Standard Time
From: Ehouse@diabetes.org
To: HEHodson@aol.com
CC: CStevens@diabetes.org, NHinton@diabetes.org

Dear Hope:

I received a call from Mutual of America today and they will be calling you this afternoon to review the information that they will be providing Fidelity Investments at time of transfer.

The ADA Pension Plan, currently administered by Mutual of America, will be making your account whole on May 22, 2003. Mutual of America will notify you of the exact amount that they are transferring to the new Fidelity Investment account. Their calculation will include the following factors: your salary at the time of disability, the fact that you became immediately vested in the plan at time of disability, and all contribution that would have been made monthly for you if you continued to work.

I have ensured, when drafting the new Fidelity documents, that the new plan mirror our previous Mutual of America Pension Plan. That being said, you will be eligible to receive the same contribution schedule made available to you previously until you reach age 65.

Additionally, when you were with an affiliate, you had a life insurance policy that has remained, and will continue to remain active with Mutual of America until age 65. At age 65, you will have the ability to convert the group policy to an individual policy and purchase that policy. I must let you know that it has been my experience that these plans are expensive to purchase. I would recommend that if you intend to convert and purchase your life insurance, that you will need to plan in advance and get a projected estimate from Mutual of America before approaching retirement age.

Please feel free to contact me with any questions and concerns. Thank you.

Eileen C. House
National Director, Compensation, Benefits & Systems
American Diabetes Association,
1701 North Beauregard Street,
Alexandria, VA 22311
(703) 299-2057

Exhibit F

From: "Eileen House"
To: hopeny@hotmail.com
Subject: Re: Payments to plan
Date: Thu, 03 Jul 2003 13:00:24 -0400

Hello Hope:

I just tried to call you and reached a busy line.

I just wanted to reassure you that ADA will continue to pay for your
pension based upon the salary that you were making at your
departure.

I am still trying to determine the method that we will use to make the
payment for your retirement at age 65.

I will keep in contact with you. Have a good weekend.

Eileen C. House
National Director, Compensation, Benefits & Systems

Exhibit C

From: "Eileen House" <EHouse@diabetes.org>
To:     <hopeny@hotmail.com>
CC:    "Caroline Stevens" <CStevens@diabetes.org>, "Naccie Hinton"
<NHinton@diabetes.org>
Subject:   Pension Plan - ADA
Date:  Mon, 08 Sep 2003 10:23:53 -0400

Dear Hope:

Good morning. Thank you for your message. Last week we received the calculation of the
benefit paid to you by Mutual of America. I have given the information to our CPA for review.

The Mutual of America plan stated that if ADA terminated the plan that disability credits would
cease at the time of plan termination. As mentioned in previous communications, we have made
special arrangements to calculate and pay to you the monthly contributions from date of plan
termination through age 65. We will do this in a one-time payment.

Through research we have found that ADA can not contribute money for your retirement because
of your non-employee status. We are preparing a calculation that will take into consideration the
monthly contribution made under the prior plan's credits (from termination of Mutual of America
plan to retirement age) and ensure that you receive that amount in a lump sum this year so that
you can set up a personal retirement account. The interest accrued will depend on your selection
of retirement vehicles.

Our research and calculations should be done by the end of the month so you should plan on
finding a vehicle in which to invest this payment. My hope is to deliver the release document and
calculation to you in early October.

Thank you again for touching base with me.

Sincerely,


Eileen C. House - National Director, Compensation,
Benefits & Systems
American Diabetes Association
1701 North Beauregard Street
Alexandria, VA 22311
(703) 299-2057